IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NANETTE SUE LANEY,

      Plaintiff,

v.                                                                                                                        CV 17-1062 JHR

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

      Defendant.

## **MEMORANDUM OPINION AND ORDER**

      This matter comes before the Court on Plaintiff Nanette Sue Laney's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum [Doc. 15], filed April 6, 2018. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge to conduct dispositive proceedings in this matter, including entry of final judgment. [Docs. 3, 5, 7]. Having studied the parties' positions, the relevant law, and the relevant portions of the Administrative Record ("*AR*"), the Court grants Ms. Laney's Motion and remands this case for further administrative fact finding.

    **I.**       **INTRODUCTION**

      Ms. Laney claims that she cannot work for a variety of health reasons. In reaching the opposite conclusion, the administrative law judge ("ALJ") assigned to her case found that Ms. Laney retains the residual functional capacity ("RFC") to perform work that exists in significant numbers in the national economy. In reaching this finding, the ALJ relied on the testimony of a vocational expert ("VE"), who described three jobs that Ms. Laney can allegedly perform despite her limitations. However, the ALJ failed to confirm that the VE's testimony was consistent with

the Dictionary of Occupational Titles ("DOT"). This is important in this case because, where an inconsistency exists, the VE must explain how a person with the claimant's RFC can perform the described job. However, no such explanation was elicited by the ALJ in this case, and case law confirms that two of the three jobs the VE identified conflict with the ALJ's RFC finding. While the remaining job arguably fits within Ms. Laney's RFC, the Court cannot confidently say that it exists in "significant numbers in the national economy" under the facts of this case. As such, the Court has no choice but to reverse the ALJ's finding of nondisability, and remand this case for further administrative fact finding.

**II.     BACKGROUND**

Ms. Laney filed an application with the Social Security Administration for disability insurance benefits under Title II of the Social Security Act on August 26, 2013. *AR* at 170-176. As grounds, Ms. Laney alleged the disabling conditions of "severe chemical sensitivities (allergies to petroleum-based products), PTSD, back and neck injury, head injuries, chronically fatigued, Lyme disease, babesiosis, reactive airway disorder, [and] liver insufficiency." *AR* at 171. Ms. Laney alleged that her conditions became severe enough to keep her from working on August 19, 2011. *AR* at 175. The Administration denied Ms. Laney's claim initially and upon reconsideration, and she requested a *de novo* hearing before an ALJ. *AR* at 69-117.

ALJ Michelle Lindsay held a hearing on May 19, 2016. *AR* at 34-68. On September 29, 2016, the ALJ issued an unfavorable decision, finding that Ms. Laney has not been under a disability as defined in the Act from her alleged onset date through her last date insured. *AR* at 8-33. In response, Ms. Laney filed a Request for Review of Hearing Decision/Order on November 30, 2016. *AR* at 167-168. After reviewing her case, the Appeals Council denied Ms. Laney's request for review on September 7, 2017. *AR* at 1-3. As such, the ALJ's decision became the final

decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4).[1]

At Step One of the sequential evaluation process, the ALJ found that Ms. Laney had not engaged in substantial gainful activity from her alleged onset date through her date last insured. *AR* at 13. At Step Two, she determined that Ms. Laney had the severe impairments of "Post Traumatic Stress Disorder (PTSD); depressive disorder; generalized anxiety disorder; history of tick borne illness; and chemical sensitivities." *AR* at 13. At Step Three, the ALJ concluded that Ms. Laney's impairments, individually and in combination, do not meet or medically equal the regulatory "listings." *AR* at 14-17. Ms. Laney does not challenge these findings on appeal. [*See* Doc. 15].

---

[1] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):
> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

When a claimant does not meet a listed impairment, the ALJ must determine her RFC. 20 C.F.R. § 404.1520(e). "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Ms. Laney retained the RFC to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she should have avoided more than occasional exposure to extreme heat, cold, wetness, and humidity. She should have avoided all exposure to fumes, odors, heavy concentration of dust or gases, or poor ventilation. She was able to understand, remember, and carry out simple instructions, and maintain attention and concentration to perform simple tasks for two hours without requiring redirection to the task. After a standard break she would have been able to attend and concentrate for two more hours, etc. throughout the workday. She should have had no more than occasional contact with the general public and only superficial interactions with supervisors and co-workers. She required work involving no more than occasional change in the routine work setting and no more than occasional independent goal setting or planning.

*AR* at 17.

Employing this RFC at Steps Four and Five, and relying on the testimony of a VE, the ALJ determined that Ms. Laney could not have returned to her past relevant work as a tutor, work study coordinator, census worker, or public health educator. *AR* at 27. However, the ALJ, relying on the testimony of the VE, found that there were jobs that exist in "significant numbers" in the national economy that Ms. Laney could have performed despite her limitations. *AR* at 27-28. Specifically, the ALJ determined that Ms. Laney retained the functional capacity to work as an office helper (43,000 jobs nationally), shipping and receiving weight clerk (32,000 jobs nationally), or mail clerk (58,000 jobs nationally) during the relevant time period. *AR* at 28. Accordingly, the ALJ

determined that Ms. Laney was not disabled as defined in the Social Security Act from her alleged onset date through her date last insured and denied benefits. *AR* at 28.

### III. LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "[T]he agency's 'failure to apply the correct legal standards, or to show [the Court] that it has done so' is 'grounds for reversal.'" *Bryant v. Comm'r, SSA*, --- F. App'x, ----, 2018 WL 6133387, at *2 (10th Cir. Nov. 23, 2018) (unpublished) (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)). Importantly, the Court cannot "presume to interpose [its] judgment for that of the ALJ." *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).

### IV. ANALYSIS

In addition to the Step Five errors requiring remand, Ms. Laney raises a number of issues related to the ALJ's weighing of the medical evidence and subsequent RFC findings. [*See generally* Doc. 15]. Because the Court concludes that the ALJ erred as a matter of law by failing to resolve an actual conflict between Ms. Laney's RFC and the jobs identified by the VE, and by neglecting to make the required factual finding of whether or not the jobs at issue were "significant" in Ms. Laney's case, the Court will not address Ms. Laney's other claims of error "because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bryant*, 2018 WL 6133387, at *5 (citing *Watkins* for this proposition).

It is well settled that an ALJ must inquire about and resolve any conflicts between a VE's testimony regarding a job and the description of that job in the Dictionary of Occupational Titles. *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) (discussing Social Security Ruling 00-4p and *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999)). "Questioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations falls within [the ALJ's] duty [to develop the record]." *Haddock*, 196 F.3d at 1091. As such, an "ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.* Ms. Laney argues that the ALJ failed to conduct this inquiry in her case. [Doc. 15, pp. 23-24]. Having reviewed the record, the Court agrees that the ALJ erred by not inquiring as to whether there were any conflicts between the VE's testimony about the jobs Ms. Laney could perform and the DOT. *See AR* at 57-67. The next question is whether this error harmed Ms. Laney: that is, whether there were unresolved conflicts between the jobs identified and her RFC. *See Poppa*, 569 F.3d at 1173.

Ms. Laney argues that such a conflict existed for two of the jobs identified in her case. Relying on *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), Ms. Laney argues that the GED reasoning level (three) of the shipping and receiving weight clerk and mail clerk positions is inconsistent with her RFC, which limits her to simple, routine tasks. [*See* Doc. 15, p. 24]. The Commissioner all but concedes this error, as she relies on *Hackett* for the proposition that "[t]he Tenth Circuit has repeatedly held that reasoning level *two* is consistent with a residual functional capacity limitation to simple tasks." [Doc. 17, p. 21 (emphasis added)]. Indeed, in *Hackett* the Tenth Circuit held that a limitation to "simple and routine work tasks" "seems inconsistent with the demands of level three reasoning." *Hackett*, 395 F.3d at 1176. Thus, Ms. Laney is correct that

two of the jobs the VE identified as within her RFC are inconsistent with her RFC. *See* DICOT 222.387-074, 1991 WL 672108 (shipping and receiving weight clerk); DICOT 209.687-026, 1991 WL 671813 (mail clerk). As such, these two jobs cannot form the basis of substantial evidence supporting the Commissioner's denial at Step Five.

The Commissioner points out that this still leaves the job of office helper, which "has a GED reasoning level of two, which is entirely consistent with the assessed residual functional capacity." [Doc. 17, p. 22 (citing *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009))]. As such, the Commissioner posits that the ALJ's error in this case was harmless because "[t]he vocational expert testified that there are 43,000 such jobs in the national economy (Tr. 65), and thus this job alone satisfies the Commissioner's step five burden in this case." [*Id.* (citing *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished); *King v. Berryhill*, CV 16-1147 KBM, 2018 WL 851358, *12-14 (D.N.M. Feb. 12, 2018) (unpublished))]. Unfortunately for the Commissioner, this Court has very recently rejected this very argument where the number of jobs at issue was 42,724. *See Roybal v. Berryhill*, CV 17-1045 JHR, 2019 WL 318387, at *4 (D.N.M. Jan. 24, 2019).

*Roybal* followed two other cases where this Court declined to find low numbers of jobs in the national economy to be "significant" as a matter of law where the ALJ failed to make that factual finding in her decision. *See Crockett v. Berryhill*, CV 17-0955 JHR, 2018 WL 6250602 (D.N.M. Nov. 29, 2018) (6,400 jobs); *Brandenburg v. Berryhill*, CV 17-0507 JB/JHR, Doc. 27 (D.N.M. May 25, 2018), *report and recommendation adopted*, 2018 WL 3062591 (D.N.M. June 21, 2018) (5,200 jobs). The Court so found on the basis of the principles of both horizontal and vertical stare decisis. *See* Black's Law Dictionary, 710 (Fourth Pocket Ed. 2011). "Stare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development

7

of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Janus v. Am. Fed'n of State, County, & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2478 (2018) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)). The Commissioner in this case has not given the Court reason to alter its *Roybal* analysis.

As was first discussed in *Brandenburg* and was later reiterated in *Crockett* and *Roybal*, the pertinent regulation does not permit an ALJ to rely on "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [a claimant] live[s.]" *See* 20 C.F.R. § 404.1566(b). Thus, an ALJ must evaluate each case on its individual merits in determining whether work exists in significant numbers in the national economy as applied to a given claimant's factual circumstances. *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). For this reason, the Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number[.]'" *Id.* Rather, an ALJ should consider the "intrinsic" effects of a claimant's impairments when determining whether a certain number of jobs is "significant," "because they prevent the claimant from *accessing* certain jobs in the local or national economy." *Taskila v. Commissioner of Social Security*, 819 F. 3d 902, 906 (6th Cir. 2016). Thus, an ALJ must consider certain factors when determining whether the number of jobs is significant, including: "the level of the claimant's disability; the reliability of the vocational expert's testimony; the distance the claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the type and availability of such work, and so on." *Trimiar*, 966 F.2d at 1330 (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988), in turn quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988)).

It is undisputed that the ALJ did not complete a *Trimiar* analysis as to the 43,000 office helper jobs identified by the VE. This is clear error. *See Allen v. Barnhart*, 357 F.3d 1140, 1145

8

(10th Cir. 2004). The remaining question is whether this Court should find the error to be harmless and recognize 43,000 jobs as significant as a matter of law. *See Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) (unpublished); *Raymond*, 621 F.3d at 1274 n.2; *Harmon*, 168 F.3d at 292. The Court declines to do so, for the reasons stated in *Roybal*. That is, the Commissioner has failed to convince the Court that the factors borrowed from the Sixth Circuit in *Trimiar* do not apply here, where the number of available jobs (43,000) does not approach the number of jobs the Tenth Circuit has found to be legally significant. *See Evans*, 640 F. App'x at 736 ("the number appears to be somewhere between 100 . . . and 152,000[.]").

The Commissioner's citations to *Rogers* and *King* do not convince the Court otherwise. As was explained in *Roybal¸ see* 2019 WL 318387, at *6, the claimant in *Rogers* did not argue that 11,000 was not a significant number. *See* 312 F. App'x at 141. Thus, the Tenth Circuit's decision did not address the issue. Additionally, the only Tenth Circuit case the Court is aware of to have addressed *Rogers*, *Evans v. Colvin*, does not rely upon it to establish the minimum number of jobs to be enough for harmless error. *See Evans*, 640 F. App'x at 736. Thus, the Commissioner has given this Court no reason to rely on *Rogers* when the Tenth Circuit was unwilling to do so.

Moreover, the Court explained why it could not follow *King* in *Roybal*. *See* 2019 WL 318387, at *6. In *King*, this Court, Magistrate Judge Karen Molzen presiding, found 47,500 jobs to be nationally significant, and applied harmless error to affirm the ALJ's conclusion that the claimant was not disabled. *King*, 2018 WL 851358, at *13. In doing so, however, Judge Molzen determined that the *Trimiar* factors do not apply to cases involving national numbers. *See id.* ("Where the focus is on national availability of jobs, however, the particularized *Trimiar* inquiry would confuse the issues."). This Court could not agree with this conclusion in *Roybal* and declines to change its view on the matter here, for one very important reason: the Sixth Circuit, from which

9

the *Trimiar* factors were borrowed, does not draw such a distinction. *See Taskila*, 819 F.3d at 904 (quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988); *see id.* at 905 ("While the frame of reference has changed, the standard of review has not. The current inquiry—focused on nationwide jobs, not just jobs in the claimant's locale—is no less claimant-specific than the one Judge Friendly adopted."). Thus, the Sixth Circuit applies the *Trimiar* factors (borrowed from *Hall*), despite the law's current focus on jobs in the national economy.

Therefore, neither *Rogers* nor *King* convince this Court that it should change its approach in this case. The significant numbers inquiry is a fact question reviewed for substantial evidence, not a legal question to be reviewed as a matter of statutory interpretation. *Taskila*, 819 F.3d at 905. Thus, "[t]he Tenth Circuit has emphasized that 'the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation' and, as such, 'the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" *Padilla v. Berryhill*, CV 16-0106 KK, 2017 WL 3412089, at *11 (D.N.M. Mar. 28, 2017) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004)). Therefore, unless the number of jobs in a case reaches levels affirmed by the Tenth Circuit as significant as a matter of law, or the court or the Administration change the current regulations to reflect a lower number, this Court declines to apply harmless error in the absence of a proper *Trimiar* analysis.

As the Tenth Circuit has stated, "each case should be evaluated on its individual merits." *Trimiar*, 966 F.2d at 1330. Therefore, "because the ALJ failed to evaluate the *Trimiar* factors and make specific factual findings regarding the numerical significance requirement, [the Court] cannot properly review this issue." *Rhodes v. Barnhart*, 117 F. App'x 622, 532 (10th Cir. 2004) (unpublished); *see Allen*, 357 F.3d at 1144 (Trimiar's insistence on an antecedent exercise of

judgment by the ALJ is not novel. On the contrary, it is consistent with, if not compelled by, our broader recognition that as a court acting within the confines of its administrative review authority, we are empowered only to review the ALJ's decision for substantial evidence and … we are not in a position to draw factual conclusions on behalf of the ALJ."). Absent the proper analysis by the ALJ, this Court cannot confidently say that 43,000 jobs, spread across several regions of the country, are significant as a matter of fact, and the Court declines the Commissioner's invitation to find them significant as a matter of law.

## V. CONCLUSION

Until the Administration or a higher court draws a definitive line establishing the number of national jobs that is "significant" as a matter of law, administrative law judges in this circuit must adhere to the principles set forth in *Trimiar* and engage in the factoral analysis it sets forth when the number of national jobs at issue is significantly lower than 152,000. Because the ALJ did not comply with *Trimiar* here, the Court must reverse and remand this case for further administrative proceedings.

Wherefore, IT IS THEREFORE ORDERED that Plaintiff Nanette Sue Laney's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum [Doc. 15], is GRANTED and the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this decision.

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent